# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA LUMAS,<br><br>                        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, and BARBARA ANTONE,<br><br>                        Defendants. | Case No.: 19-CV-0294 W (WVG)<br><br>**ORDER GRANTING DEFENDANT UNITED STATES'S 12(B)(1) MOTION TO DISMISS [DOC. 7]** |

    Pending before the Court is Defendant United States of America's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (*Mot.* [Doc. 7.]; *see also Reply* [16].) Plaintiff opposes. (*Opp'n* [Doc. 11].)

    The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the reasons that follow, the Court **GRANTS** the motion [Doc. 7].

1

## I. BACKGROUND

On May 25, 2017, Plaintiff Patricia Lumas ("Lumas") was injured while riding in a vehicle driven by Defendant Barbara Antone-Levy ("Antone").[1] (*Compl.* [Doc. 1] ¶¶ 14–20.) Lumas alleges that Antone was working within the scope of her responsibilities as the Quechan Indian Tribe Language Preservation Coordinator when the accident occurred. (*Id.* ¶¶ 8–10; *DHHS Claim* [Doc. 1-1, Ex. 1].)

Lumas submitted a claim against the Fort Yuma Quechan Indian Tribe, to which Hudson Insurance Company replied:

> [Lumas] should immediately submit this matter to the federal government, on the grounds that it may be a claim against a tribal contractor and its employees, arising out of tribal activities funded by a Self-Determination Contract . . . . In the meantime, Hudson is taking no further action concerning this matter while it awaits the decision from the federal government.

(*Hudson Insurance Correspondence* [Doc. 11-1, Ex. 1].)

In February of 2019, Lumas brought this action. (*Compl.* [Doc. 1].) In line with Hudson's analysis, Lumas contends that the Federal Torts Claims Act ("FTCA") makes the federal government liable for Antone's negligent driving. (*Id.* ¶¶ 1–2.)

On June 14, 2019, the United States filed the instant motion requesting dismissal of Lumas's complaint for lack of subject matter jurisdiction under Rule 12(b)(1). (*Mot.* [Doc. 7.]; *see also Reply* [16].) Lumas opposes and each party has submitted supplemental briefing at this Court's request. (*Opp'n* [Doc. 11]; *Pl.'s Suppl. Br.* [Doc.18]; *Def.'s Suppl. Br.* [Doc. 19].)

---

[1] Antone's last name occasionally switches to Levy in the record. The two are one and the same for the purposes of this Order.

2

## II. LEGAL STANDARD

Rule 12(b)(1) provides a procedural mechanism for a defendant to challenge subject-matter jurisdiction. "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence. Where jurisdiction is intertwined with the merits, we must assume the truth of the allegations in a complaint unless controverted by undisputed facts in the record." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks, brackets, ellipsis and citations omitted).

A facial attack challenges the complaint on its face. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). But when the moving party raises a factual challenge to jurisdiction, the court may look beyond the complaint and consider extrinsic evidence, and "need not presume the truthfulness of the plaintiff's allegations." See id. Once the defendant has presented a factual challenge under Rule 12(b)(1), the burden of proof shifts to the plaintiff to "furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Id.

## III. DISCUSSION

Here, the United States asserts a factual challenge. It argues there are no facts in this case overriding its baseline immunity from suit. The burden of proof therefore lies with Lumas to furnish sufficient evidence establishing subject matter jurisdiction. See Safe Air for Everyone, 373 F.3d at 1039.

The doctrine of sovereign immunity establishes that "'[t]he United States, as sovereign, is immune from suit save as it consents to be sued.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). The United States may waive its sovereign immunity, but any such waiver must be strictly interpreted. Id. The FTCA is a limited waiver of sovereign immunity. It establishes that a plaintiff can sue the United States for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

In its motion to dismiss, the United States argues that the FTCA does not apply here to grant subject matter jurisdiction because Lumas was not a government employee. (*Mot.* [Doc. 7] p. 2.) However, Lumas contends that the Indian Self-Determination and Education Assistance Act ("ISDEAA") extends FTCA coverage to torts of tribal employees acting pursuant to federal contracts granted under the ISDEAA. (*Opp'n* [Doc. 11] p. 6.)

An ISDEAA contract provides funding to a tribe to plan, conduct, and administer programs that the federal government would have otherwise provided, thereby furthering Indian self-determination. See 25 U.S.C. § 5321. A "self-determination contract" under the ISDEAA is one between a tribal organization and either the Secretary of Health and Human Services ("DHHS") or the Secretary of the Interior. 25 U.S.C. § 5304(i), (j). Congress amended the ISDEAA to allow FTCA recovery when death or injury results from the performance of a self-determination contract. 25 U.S.C. § 5321(d). While tribal members are not federal employees, they are deemed "covered employees" when operating under ISDEAA self-determination contracts and treated as federal employees for FTCA purposes. Id. Thus, the controlling question for purposes of the current motion is whether Antone was working under a self-determination contract when the alleged tortious conduct occurred.

At the time of the accident, the Quechan Indian Tribe employed Antone as a Tribal Language Preservation Coordinator. (*DHHS Claim* [Doc. 1-1, Ex. 1]; *Quechan Language Revitalization Project Grant* [Doc. 16-10, Ex. A] pp. 45–47.) According to the official responsible for administering self-determination contracts between the DHHS and the Quechan Indian Tribe, the position of Tribal language Preservation Coordinator

4

was not funded by either the Alcohol/Drug Abuse Prevention Program or the Community Health Representatives Program—the only two programs funded by DHHS pursuant to the ISDEAA at the time of the accident. (*Morales Decl.* [Doc. 16-1] ¶¶ 1–5; *Alcohol/Drug Abuse Prevention Program* [Doc. 16-2, Ex. A.]; *Community Health Representatives Program* [Doc. 16-3, Ex. B].) Likewise, the Department of Interior did not identify Antone's position in its respective ISDEAA contracts. (*Shields Decl.* [Doc. 16-6] ¶¶ 1–3; *Johnson O'Malley Program* [16-7, Ex. A]; *Higher Ed. Adult Vocational Training* [16-8, Ex. B].) In fact, Antone's position is funded by the Native Language Preservation and Maintenance Program, which was authorized under the Native American Programs Act. (*Strickland Decl.* [16-9] ¶¶ 2–3; *Quechan Language Revitalization Project* [16-10, Ex. A].) The Native American Programs Act is an entirely different statute from the ISDEAA. See 42 U.S.C. § 2991b-3.

      Nevertheless, Lumas argues the Language Preservation Program agreement for which Antone was the Program Coordinator falls under the ISDEAA because it is "for the benefit of Indians." (*Pl.'s Suppl. Br.* [Doc. 18] 4:22–5:19.) However, the ISDEAA does not say that all grants for the benefit of Indians must necessarily be a self-determination contract; it specifically provides that a "'self-determination contract' means a contract . . . entered into under subchapter I of this chapter between a tribal organization and the appropriate Secretary." 25 U.S.C. § 5304(j). The Native Language Preservation and Maintenance grant funding Antone's position was entered into under an entirely different Title than subchapter I of Title 25. Compare 25 U.S.C. § 5321, with 42 U.S.C. § 2991b-3.

5

Lumas has failed to show that an ISDEAA contract underwrote Antone's position with the Quechan Indian Tribe. Accordingly, sovereign immunity has not been waived and Lumas's complaint is dismissed for lack of subject matter jurisdiction.[2]

## IV. CONCLUSION & ORDER

Defendant's motion to dismiss for lack of jurisdiction is **GRANTED**. [Doc. 7.] This action is dismissed **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: October 10, 2019

Hon. Thomas J. Whelan
United States District Judge

---

[2] The Court finds Lumas's request for additional time to conduct a limited deposition of Antone prior to ruling on this motion futile and counter to judicial efficiency. (*Pl.'s Suppl. Br.* [Doc.18] 1:18–2:3.) The requisite information has already been supplied by the agencies involved.